UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

KRISTOPHER MICHAEL LOTZ,          )
                                  )
                                  )
        Plaintiff,                )
                                  )
v.                                )          NO. 5:24-CV-00300-MAS
                                  )
FRANK J. BISIGNANO,               )
Acting Commissioner of Social     )
Security,                         )
                                  )
        Defendant.                )

## MEMORANDUM OPINION & ORDER

Plaintiff Kristopher Michael Lotz ("Lotz") appeals the Commissioner's denial of disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. The Court addresses the parties' competing briefs on the matter and Lotz's reply. [DE 13, 17, 18]. This matter is fully ripe for review.

## I.    FACTUAL AND PROCEDURAL HISTORY

Lotz filed DIB and SSI applications on February 6, 2023, alleging disability beginning on October 1, 2022.[1] [Administrative Transcript ("TR") at 54–55]. He alleges disability due to schizophrenia spectrum and other psychotic disorders and substance addiction disorders. [TR at 54–55]. Lotz's claim was initially denied on

---

[1] The language in each regulation is identical, applying to DIB and SSI claims respectively.

May 8, 2023, and denied upon reconsideration on June 6, 2023.  [TR at 102, 106].

Administrative Law Judge ("ALJ") Davida Isaacs conducted a hearing on March 12,

2024, and an impartial Vocational Expert ("VE") appeared and testified.  [TR at 34].

The ALJ ultimately concluded that Lotz was not disabled under the Social Security

Act.  [TR at 21].  The Appeals Council then denied Lotz's request for review.  [TR at

1].

Lotz was 33 years old at the alleged onset date.  He attended school through

twelfth grade.  [TR at 62].  He held an array of jobs: In 2012, Lotz enlisted in the

army, and served as an infantryman.  [TR at 62, 186].  He served in the army for

approximately a year.  [TR at 62].  Although his mother indicated that he was "kicked

out" for smoking marijuana, Lotz maintains that he was honorably discharged.  [TR

at 332].  After his service, in 2014 and 2015, Lotz worked as a prison guard.  [TR at

46].  He was never required to restrain inmates or perform active work.  [TR at 48].

His most recent job was at Papa John's.  He was fired after arguing with one of his

supervisors.  [TR at 37–38].  During the hearing Lotz testified that he struggles with

paranoia; anxiety; visual and auditory hallucinations, which medication diminishes

but does not alleviate; depression stating that, at times, it takes an "act of God just

to drag [him] out of bed[;]" and without his medication, he becomes violent.  [TR 37–

44].  The impartial VE testified that Lotz had the capacity to perform work as a floor

cleaner, kitchen helper, production laborer, and sweeper.  [TR at 49–50].

After considering the testimony presented during the administrative hearing

and reviewing the record, the ALJ concluded that Lotz suffers from the severe

impairment of schizoaffective disorder. [TR at 12]. However, the ALJ concluded that this impairment did not meet or medically equal the criteria of Listing 12.03. [TR at 13]. Further, the ALJ found that Lotz had the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels with some nonexertional limitations:

> He can have no more than occasional exposure to pulmonary irritants and can never climb ladders/scaffolds. He only has the judgment to perform simple, routine work, and can interact no more than occasionally with coworkers and supervisors, but never interact with the public. He can only perform work involving no more than occasional changes in job tasks, and he can only perform work not fast-paced work-assembly line or hourly or more frequent.

[TR at 14].

Based on his age, education, work experience, RFC, and the VE's opinion, the ALJ concluded that Lotz could perform jobs that exist in significant numbers in the national economy, including floor cleaner, sweeper, production laborer, and produce sorter. [TR at 20–21]. Accordingly, the ALJ determined that Lotz was not under a disability, as defined in the Social Security Act, from October 1, 2022, through the date of her decision (April 30, 2024). [TR at 21].

## II.   **LEGAL FRAMEWORK**

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any

Page **4** of **20**

ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). In other words, the ALJ's findings are conclusive if they are supported by substantial evidence.

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 404.1520(a)(4).

### III.    ANALYSIS

On appeal, Lotz raises one primary claim of error. Specifically, Lotz claims that the ALJ failed to conduct a substantive analysis at Step Three of whether he

satisfied "paragraph C" of Listing 12.03.  The Commissioner counters that Lotz is essentially requesting that the Court reweigh the evidence, and it should not undergo such an endeavor on a substantial evidence review.

At Step Three, the claimant has the burden of establishing that his impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii).  "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'"  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 416.925(c)(3)).  The claimant must present "specific medical evidence to satisfy all of the criteria" of a particular Listing.  *Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 786 (6th Cir. 2010) (citing 20 C.F.R. § 416.925).  If the ALJ determines that a claimant's impairment meets or equals a Listing, "the claimant is conclusively presumed to be disabled without further analysis."  *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995).

Following the example set by other circuits, the Sixth Circuit explicitly instructs ALJs to "actually evaluate the evidence, compare it to [the relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.  *Reynolds*, 424 F. App'x at 416 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).  However, the Sixth

Circuit later clarified that a reviewing court may consider an ALJ's entire decision for sufficient factual findings to support their Step Three conclusion and determine whether meaningful judicial review is possible. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

Listing 12.03 addresses schizophrenia spectrum and other psychotic disorders. 20 C.F.R. §§ 416.920(a)(4)(iii); Pt. 404, Subpt. P, App. 1 § 12.03. Listing 12.03 requires either A and B, or A and C:

A. Medical documentation of one or more of the following:

1. Delusions or hallucinations;

2. Disorganized thinking (speech); or

3. Grossly disorganized behavior or catatonia.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00(F)):

1. Understand, remember, or apply information (see 12.00(E)(1)).

2. Interact with others (see 12.00(E)(2)).

3. Concentrate, persist, or maintain pace (see 12.00(E)(3)).

4. Adapt or manage oneself (see 12.00(E)(4)).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

       1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00(G)(2)(b)); and

       2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00(G)(2)(c)).

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03.

At Step Three, the ALC found that Lotz's mental impairments do not meet or medically equal the criteria of Listing 12.03. [TR at 13]. The ALJ provided a detailed analysis of each of the "paragraph B" areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace, and adapting or managing oneself, and found moderate limitation in each one. [TR at 13–14]. In a scant paragraph, the ALJ also found Lotz's impairments do not meet the "paragraph C" criteria:

> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Specifically, the claimant does not have a "serious and persistent" mental disorder with a two-year or more history of medical treatment or a highly structured setting that has failed to afford achieving more than "marginal adjustment", meaning that his adaptation to the requirements of daily life is fragile; that is, he has a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.

[TR at 14].

Now, Lotz does not contest the ALJ's analysis of the "paragraph B" criteria; instead, he argues that the ALJ erred "by providing zero substantive analysis of paragraph C." [DE 13, Page ID# 762].

Page **8** of **20**

Notably, in *Reynolds*, the ALJ failed to analyze the listings corresponding to the claimant's physical impairments altogether (although he did analyze the claimant's mental impairment).  424 F. App'x at 416.  The claimed deficiency at issue here is not quite as egregious.  In fact, the ALJ spent over a full page performing the Step Three analysis for Listing 12.03.

In recent years, some courts in the Sixth Circuit have appeared to extend the holding of *Reynolds* to include failing to fully evaluate and explain various subparts of a Listing.  *See, e.g.*, *Dodson v. SSA*, No. 2:20-CV-00048, 2022 U.S. Dist. LEXIS 30600 (M.D. Tenn. Feb. 22, 2022) (determining that the ALJ's opinion did not make it clear that the ALJ considered certain record evidence and remanding for reconsideration of whether the claimant satisfied the paragraph C criteria of certain listings); *Grady J.M. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3883, 2024 U.S. Dist. 43640 (S.D. Ohio Mar. 12, 2024) (examining whether the plaintiff raised a substantial question as to the satisfaction of certain subparts because in the Step Three analysis the ALJ stated only that "[i]n this case the evidence fails to establish the presence of the 'paragraph C' criteria").

Other courts have expressed disdain for conclusory dispositions on subparts of the Listings, but do not allow such brevity to be fatal if the requisite analysis is found in other parts of the ALJ's opinion.  *See, e.g.*, *Michelle A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-109, 2023 U.S. Dist. LEXIS 3997, at *18 (S.D. Ohio Jan. 9, 2023) ("Regarding the Paragraph C criteria, the ALJ's disposition is quick and conclusory, merely stating that the criteria were considered, and the evidence failed to establish their

presence."), *report and recommendation aff'd*, 2023 U.S. Dist. LEXIS 169304 (S.D. Ohio Sept. 22, 2023); *Kenneth S. v. Comm'r of the SSA*, No. 3:20-CV-00400, 2022 U.S. Dist. LEXIS 167305 (S.D. Ohio Sept. 15, 2022) ("Yet although the ALJ's 'paragraph C' findings initially appear conclusory, this Court may consider the ALJ's evaluation of the evidence at other steps of the decision to determine how to 'credit the evidence at issue in this appeal.'" (quoting *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 (6th Cir. 2014))).

On the other hand, some courts refuse to remand a case solely based on an ALJ's failure to fully explain a certain subpart, explaining that most cases that are remanded for failure to perform a proper Step Three analysis address situations where the ALJ failed to analyze the relevant listing at all. *See, e.g.*, *Larraga v. Comm'r of Soc. Sec.*, No. 1:24-CV-02137-BMB, 2025 U.S. Dist. LEXIS 167485, at *23 (N.D. Ohio Aug. 28, 2025) ("But *Johnson* did not address Paragraph C criteria; rather the ALJ there did not analyze at all whether the claimant's schizophrenia met Listing 12.03 . . . . Unlike that ALJ, the ALJ here devoted over six pages to analyzing Listing 12.03."). Indeed, most cases remanding on a Step Three analysis do involve failure to fully address a Listing in and of itself, not the failure to fully address a single subpart. *See, e.g.*, *Pilus v. Kihakazi*, No. 3:20-CV-01652, U.S. Dist. LEXIS 263625, at *23 (N.D. Ohio July 29, 2021) (remanding because the ALJ committed an error of law by addressing the Listing in a single, conclusory paragraph); *Coler v. Comm'r of Soc. Sec.*, No. 1:20-CV-00553, 2021 U.S. Dist. LEXIS 178322 (W.D. Mich. Sept. 20, 2021) (explaining that the ALJ's discussion of the listing is "scant," turning to the

remainder of the ALJ's opinion to determine whether meaningful judicial review is possible, and eventually remanding the case because the ALJ failed to address certain practitioner assessments, leaving the court to "wonder whether it was appropriately discounted and, if so, on what basis"). One common thread runs through most of these opinions. An ALJ's opinion must "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

Thus, noting that the ALJ in this instance provided a more limited analysis that largely summarized the requirements of 12.03C, this Court will turn to the remainder of the ALJ's opinion to determine if there is sufficient explanation to permit meaningful judicial review. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014). In this case, the ALJ provided a significantly more detailed analysis of Lotz's mental impairments in the "paragraph B" evaluation, as well as in the subsequent RFC analysis. [TR at 13–19]. Accordingly, this Court will consider the ALJ's evaluation in each of those parts of the opinion when evaluating Lotz's assignment of error, and whether the ALJ sufficiently described why the evidence did not support the "paragraph C" criteria such that this Court can conclude that Listing 12.03 was not met. *See Grohoske v. Comm'r of Soc. Sec.*, No. 3:11-CV-410, 2012 U.S. Dist. LEXIS 99492, at *3 n.52 (N.D. Ohio July 26, 2013) (noting that "the ALJ's discussions at step four were not so extensive as to provide sufficient evidence of [the plaintiff's] impairments in light of the listing as to permit a court to conclude from other parts of the ALJ's opinion that the listings were not met").

To begin, Lotz correctly submits that the ALJ found and clearly stated that his schizoaffective disorder is a severe impairment, which clarifies that Lotz's schizoaffective disorder is serious and persistent. *See Michelle A.*, U.S. Dist. LEXIS 3997, at *18. Additionally, the ALJ notes that Lotz's alleged onset date was October 1, 2022, with his initial hospitalization and diagnosis occurring between October 11, 2022, and October 25, 2022, which does not meet the durational requirement of 12.03(C).[2]  [TR at 15–16].

Second, the ALJ extensively described Lotz's ongoing medical treatment and mental health therapy and the resulting lessening of his symptoms. Specifically, the ALJ noted that Lotz's delusional state of mind "has been ameliorated with ongoing medication management" and that he has "experienced an improvement in symptoms." [TR at 18]. Furthermore, the ALJ noted that Lotz's depression, anxiety, shuffling gait, psychomotor retardation, and mental status have improved since his initial hospitalization in October 2022. [TR at 18–19]. Finally, the ALJ describes, and the record supports, that Lotz still has hallucinations; however, through medical treatment and therapy, he now reports better management of them and states that he is able recognize that they are not real. [TR at 18–19]. Therefore, the ALJ provided sufficient explanation and substantial evidence to support the conclusion that Lotz met the medical treatment prong of "paragraph C."

---

[2] Lotz challenged the ALJ's durational determination, which is addressed later in this Opinion.

Thus, Lotz correctly states that this issue boils down to the analysis of the marginal adjustment criteria. Marginal adjustment means that a claimant has "minimal capacity to adapt to changes in [their] environment or demands that are not already part of [their] daily life." 20 C.F.R. 404 Subpt. P, App. 1, § 12.00(G)(2). Marginal adjustment exists where "evidence shows that changes or increased demands have led to exacerbation of [a claimant's] symptoms and signs and to deterioration in [their] functioning . . . . Such deterioration may have necessitated a significant change in medication or other treatment." *Id.*

The ALJ discussed Lotz's ability to adapt in the "paragraph B" analysis. She acknowledged Lotz and his mother's subjective reports that Lotz has no difficulties handling personal care. [TR at 14]. The ALJ expanded on this by noting other reports by Lotz and his mother that he needs reminders to clean up, brush his teeth, and take showers, which seemingly contradict the other reports. The ALJ also noted that Lotz often needs his mother to assist him in making larger decisions. Ultimately, the ALJ concluded that Lotz has only a moderate limitation in adapting or managing himself. [TR at 14]. Additionally, the ALJ noted that although Lotz reports difficulty with memory, completing tasks, and following instructions and that his mother must remind him to take medications, treatment notes demonstrate objective progress. [TR at 13]. For instance, as treatment progressed, Lotz's recent and remote memory no longer showed impairments, he demonstrated an average level of intelligence, and appropriate insight and judgment, whereas he initially showed diminished abilities in each of these areas. [TR at 13].

In her RFC analysis, the ALJ provided further explanation that supports her "paragraph C" conclusion regarding marginal adjustment. Throughout the RFC analysis, the ALJ balanced Lotz's subjective testimony with more objective medical evidence and reports. She noted that Lotz testified that he mainly struggles with hallucinations and when he does not take his medication, he becomes violent. [TR at 15]. He also testified that he struggles to get out of bed, concentrate, and has weekly panic attacks (although, the ALJ noted that Lotz did not have a panic attack the week of the hearing). Additionally, she revisited Lotz's ability to adapt and the necessity of the reminders from his mother to complete personal hygiene tasks, though she notes that Lotz stated that he just does not want to do these things. [TR at 15].

In juxtaposition to his testimony and subjective reports, the ALJ extensively detailed Lotz's treatment history and the improvement shown throughout. She noted that in late 2022 Lotz was experiencing restlessness, poor hygiene, poor sleep, impairments of insight and judgment, paranoia, and delusions. [TR at 16]. The ALJ acknowledged instances of marked improvement with medication throughout early 2023. [TR 17]. By June 2023, she noted, Lotz's gait shuffling and psychomotor retardation had resolved, and he was able to begin group therapy. The ALJ discussed that in the second half of 2023, Lotz reported worsening hallucinations, depression and anxiety; however, he did not report panic attacks and was well-groomed with no mental impairments or gait issues. The ALJ also acknowledged that Lotz reported experiencing visual hallucination in crowds and, December 2023, noted that they were a bit worse, but not bothersome. [TR at 18].

As for his living conditions, the ALJ noted that Lotz reported irritability toward his mother due to frustration with his living situation (in her basement at the time due to cold weather) and having to ask her for basic needs.  [TR at 17]. Specifically, the ALJ acknowledged Lotz's statement that he would like to be more independent.  The ALJ indicated that in December 2023, Lotz was living in a camper and denied housing assistance because the thought of moving produced anxiety after growing accustomed to the camper.  [TR at 18].  The ALJ recognized that, during that same therapy session, Lotz was agreeable to letting his mother facilitate the next steps with his Medicaid Targeted Case Management.

In total, the ALJ thoroughly reviewed Lotz's subjective complaints, which included depression, anxiety, paranoia, hallucinations, and some mental and physical impairments, but she also explained that Lotz's symptoms mostly showed improvement and even complete resolution of his shuffling gait, psychomotor retardation, memory impairment, attention and concentration.  [TR at 18–19]. Perhaps, most importantly, the ALJ noted that Lotz reported better management of his hallucinations and made multiple citations to the record in support of that finding. [TR at 19].  Although Lotz argues that, while on medication, his symptoms have "waxed and waned," which will not necessarily contradict a finding that he met the "paragraph C" criteria, the ALJ clearly determined, and supported with substantial record evidence, that Lotz's symptoms *improved* with treatment.  Improvement of symptoms certainly can factor into an ALJ's marginal adjustment assessment.  In fact, noted improvement of symptoms by the ALJ suggests her determination that

early reports and examinations may not accurately represent Lotz's present condition.

Additionally, the ALJ evaluated the findings of the state agency psychological consultants. [TR at 19]. She found both findings partially persuasive, questioning the lack of reference to Lotz's reports of ongoing hallucinations and the effect those may have on his concentration, persistence, pace, and ability to engage in social functioning. Significantly, both consultants found only moderate impairment in the "paragraph B" areas of functioning, and concluded that the evidence did not establish the presence of the "paragraph C" criteria. [TR at 58, 66]. Furthermore, the ALJ specifically noted that the consultants found that Lotz can complete tasks involving minimal variations in two-hour segments and adapt adequately to situational conditions and changes with reasonable support and structure. [TR at 19].

On balance, the ALJ found, "The evidence of the record did not support the severity of symptoms and degree of limitations alleged by the claimant. The evidence demonstrates that, once he was on medication, he experienced improvement in his symptoms to an extent that he has no more than moderate difficulties." [TR at 15]. She concluded that Lotz could carry out a range of simple, routine tasks. [TR at 19]. All of these findings support the ALJ's Step Three conclusion that the evidence failed to establish the "paragraph C" criteria by failing to show evidence of only marginal adjustment. Thus, there is sufficient explanation for the Court to "build an accurate and logical bridge between the evidence and the result" and engage in meaningful

Page **16** of **20**

judicial review. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

Further, the ALJ's "paragraph C" conclusion is supported by substantial evidence. As studied above, the ALJ pointed to a wide array of record evidence in the Step Three and RFC analyses, both subjective and objective. Lotz points to several pieces of record evidence that were not included in the ALJ's opinion that may support a finding of only marginal adjustment, including that Lotz received support from his mother to continue taking medications, had bouts of homelessness, chose not to engage with the household, and his mother's discussion with a practitioner about potentially filing a petition for Power of Attorney or Guardianship over Lotz for his medical needs. [DE 13, Page ID# 764–65]. However, many of these illustrations occurred over a year before the ALJ hearing and were largely resolved by then. For instance, the reference to Lotz's mother helping with medication is only evidenced in discharge records from Eastern State Mental Hospital in 2022 and largely utilize the future conditional tense, *i.e.*, "He will receive continued support from her to remain complaint with medications and gain access to medications." [TR at 290]. Although Lotz's mother continued attending appointments and supplying him with reminders, the only other explicit reference to her dispensing Lotz's medications is in November 2022. [TR at 333]. Additionally, there was no date relayed in which the "bouts of homelessness" occurred. As for the petition for Power of Attorney or Guardianship, there is record evidence that Lotz's mother was exploring that option in early 2024 and at the administrative hearing. [TR at 44, 706].

Lotz also points to the fact that he is unable to function outside the home and requires substantial psychological support from his mother.  But the evidence in the record and referenced by the ALJ shows that Lotz is able, and sometimes may prefer, to live alone.  [TR at 17, 367]  Furthermore, the Commissioner points to record evidence where Lotz reported that he prepares meals daily, either in the microwave or on the grill; cleans his room; helps with yard work; folds laundry; mows the lawn; shops for groceries once a week; reads; watches television; plays video games; visits his grandmother once a week; and occasionally attends his niece's ballgames.  [TR at 232–34].  Lotz states that his mother accompanies him to these activities because he cannot drive.  In all, although Lotz reports some limitations, the ALJ evaluated each of these and determined that these limitations have improved substantially since beginning treatment, to the point that they now provide a less marked limitation for Lotz.  And, although there may be *some* evidence to the contrary, there is substantial evidence both in the record and the ALJ's findings that support that conclusion.

As previously noted, Lotz also provides several arguments regarding his satisfaction of the durational requirement in "paragraph C."  [DE 13, Page ID# 763; DE 18, Page ID# 785].  First, he argues that because his alleged onset date is in 2022, and the ALJ decided this case in 2024, his disorder meets the two-year durational requirement.  This argument misses the mark because there were only nineteen months between the onset date and the ALJ's decision.  Lotz then states that there is evidence in the record that his mother brought him to the hospital in 2021 for similar symptoms, noting five years of "bizarre behavior."  What Lotz's brief fails to

address, however, is that the diagnostic result of that hospitalization was "likely drug-induced psychosis." [TR at 288]. Finally, Lotz points to two copies of an identical page in the record that show a diagnosis for unspecified schizophrenic spectrum disorder on March 23, 2021. [TR at 586, 718]. There is no other documentation in the record that expands on this hospital visit, the cause, or the reason for the diagnosis. Although the ALJ did not address that diagnosis anywhere in her opinion, which would potentially be a fatal flaw under different circumstances, the ALJ cited evidence contained in those same exhibits and her opinion sufficiently supported the conclusion that the evidence failed to show that Lotz achieved only marginal adjustment. Therefore, even if Lotz did meet the durational requirement, he would still fail on marginal adjustment. As such, this Court concludes that the ALJ's findings are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Court is not permitted to weigh the evidence to determine whether it might support a different result. *Id.*

## IV.   CONCLUSION

Upon consideration of the parties' respective briefs and independent review of the ALJ's decision and record evidence, the Court finds that there is no merit in Lotz's arguments that the ALJ's decision should be reversed. Furthermore, the Court substantial evidence supports the decision of the ALJ. For all the reasons discussed, and the Court being sufficiently advised, **IT IS ORDERED** that the final decision of the Commissioner denying the application of Kristopher Michael Lotz for disability and disability insurance benefits is **AFFIRMED**.

Signed this the 26th of March, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY